UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **ERNEST J. ROMER, III**, <br><br> Defendant. | 2:18-cv-12927 <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

The United States Securities and Exchange Commission ("SEC") filed this civil enforcement action under the Securities Act of 1933, 15 U.S.C. §§ 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10-b thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, asking the Court to enjoin Defendant Ernest J. Romer, III from continuing to violate federal securities law and to order him to disgorge profits obtained as a result of activity that violated these laws. Defendant never filed any responsive pleading engaging with the allegations set forth in the Complaint and, more generally, has taken no steps to defend this lawsuit. The Clerk of Court entered default against Defendant on October 30, 2018 and the SEC subsequently filed a motion requesting that the Court enter a judgment of default under Rule 55(b)(2) of the

Federal Rules of Civil Procedure. Because Defendant has received sufficient notice of this lawsuit and has also been advised of the Clerk's entry of default and given an opportunity to appear at a hearing on this matter, yet has completely failed to respond in any way, the Court will grant the SEC's motion (ECF No. 15).

## BACKGROUND

Defendant, formerly a registered broker-dealer associated with CoreCap Investments, Inc., defrauded at least 30 of his retail brokerage customers out of approximately $2.7 million from 2014 through 2016. ECF No. 1 PageID.1 (Compl.). Between July 30, 2018 and October 9, 2018, Defendant pled "no contest" to thirteen counts of felony embezzlement in Macomb County Circuit Court, Michigan, in thirteen separate cases, in violation of Mich. Comp. Laws § 750.174. On this conviction, Defendant received a sentence of 85 to 240 months in prison and was ordered to pay a total of $2,650,000 in restitution. As of the date of this order, Defendant is incarcerated in Newberry Correctional Facility, in Michigan.

On September 18, 2018, the SEC filed this federal civil action alleging that Defendant participated in a fraudulent scheme to offer or sell securities through instruments of interstate commerce, in violation of Sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act. ECF No. 1 (Compl.). The SEC further avers that Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by making false

statements of material fact in connection with the purchase or sale of securities.

The SEC's factual allegations are that Defendant persuaded at least 30 of his customers to sell securities in their CoreCap Investments account and then transfer the proceeds to either P&R Capital, LLC or CoreCap Solutions, LLC, both of which were Defendant's "personal businesses and had no relationship to CoreCap Investments." ECF No. 1 PageID.1–2. In total, 22 customers sent $1,962,887 to P&R Capital and 11 customers sent $738,200 to CoreCap Solutions. *See* ECF No. 1 PageID.5. According to the Complaint, Defendant represented to customers that, after transferring their money to P&R Capital and CoreCap Solutions, "he would invest their money in the stock market and earn them a better return than their current investments." *Id*. These statements, according to the SEC, were false; Defendant never invested his customers' money in the stock market for their benefit. *Id*. Instead, he stole the money for his own personal use, comingling approximately $2.7 million in customer funds with his advances from CoreCap Investments and using approximately $3.5 million for trading in his personal brokerage accounts. ECF No. 1 PageID.2, 6; ECF No. 15-2 PageID.153 (Wilburn Saylor, Jr. Decl.). The SEC further alleges that Defendant used approximately $714,000 of his customers' money for personal expenses, paid $343,000 of it to prior customers of his who had suffered losses in 2010–2011, sent $302,000 to customers of CoreCap

3

Investments who requested that he return some of their funds, and gave $41,000 to family members. ECF No. 1 PageID.2, 6. *See* ECF No. 15-2 PageID.153 (Saylor, Jr. Decl.) (providing exact figures).

Defendant was served with the Complaint on September 26, 2018 but missed the October 17, 2018 deadline to file a responsive pleading. *See* ECF No. 6 (Serv. Return). No attorney filed any notice of appearance on Defendant's behalf, and the Court has received no communication whatsoever from him. After Defendant missed the responsive pleading deadline, on October 30, 2018 the SEC asked the Clerk of Court to enter default against Defendant "for failure to plead or otherwise defend." ECF No. 7. That same day, the Clerk entered the default. ECF No. 8. This Court then issued an order instructing the SEC to submit a memorandum and affidavit setting forth the factual and legal basis for default judgment, including "facts showing an entitlement to the specific monetary and/or equitable relief requested." ECF No. 9. The SEC then filed the instant motion for default judgment, accompanied by an affidavit and supporting exhibits, on March 5, 2019. ECF No. 15.

On May 9, 2019, the Court issued an order notifying Defendant that a hearing on the motion for default judgment was scheduled for July 17, 2019 and specifically ordered that he "communicate with the Court by sending a letter post-marked within 30 days of the date of th[e] Order expressing whether he wishes to attend the hearing" so that the Court could take necessary steps to ensure his transport to the hearing. ECF

No. 17. The order, which was served on Defendant, further warned that, should he "express no interest in attending the hearing, or fail to respond as directed, the hearing will proceed as scheduled . . . and default judgment may be entered against him in the amount of $2,755,737, and prejudgment interest thereon in the amount of $18,724." ECF No. 17. *See* Text-Only Certificate of Service re ECF No. 17 (dated May 9, 2019). The Court never received any response from Defendant.

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure requires that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." When a party then asks the court to issue a judgment of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2685 (4th ed. 2019). *See* Fed. R. Civ. P. 55(b)(2).

Judgment by default is considered "a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). In determining whether entry of default judgment is appropriate, courts may consider a number of factors, including the amount of money

5

involved; whether there are material issues of fact; whether the plaintiff has been substantially prejudiced by the defendant's delay; and whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect by the defendant. *Id.* Though courts are not required to, they "may conduct hearings or make referrals" when such actions are helpful in determining whether to enter, and how to effectuate, judgment. Fed. R. Civ. P. 55(b)(2). *See Ford Motor Co. v. Cross*, 441 F. Supp.2d 837, 848 (E.D. Mich. 2006) ("Fed. R. Civ. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect.").

Where a defendant has failed to answer or to otherwise respond to the complaint and the Clerk of Court has entered default, "the Court must accept all well pleaded factual allegations in the . . . complaint relating to defendant . . . as true." *Grange Ins. Co. of Mich. v. Parrish*, No. 13-11822, 2014 WL 12662275, *1 (E.D. Mich. May 30, 2014) (citing *Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013)). *See Trustees of Roofers Local 19 Sec. Benefit Tr. Fund v. Traverse Bay Roofing Co.*, No. 16-13091, 2017 WL 1021066, *1 (E.D. Mich. Mar. 16, 2017). "[W]ell-pleaded factual allegations are sufficient to establish a defendants' liability" in connection with a default judgment motion. *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-CV-74510-DT, 2002

6

WL 1303039, *3 (E.D. Mich. May 21, 2002). Additionally, judgment by default may be entered without a hearing on damages where the amount claimed is "capable of ascertainment from the definite figures contained in the documentary evidence or in detailed affidavits." *Commodity Futures Trading Com'nn v. Marquis Fin. Mgmt. Syst., Inc.*, No. 03-74206, 2005 WL 3752233, *2 (June 8, 2005). Here, because Defendant has failed to plead or defend and the Clerk has entered default against him, the Court will accept as true the factual allegations contained in the Complaint and determine whether they entitle the SEC to default judgment on its asserted claims.

### A. Sections 17(a) of the Securities Act

Section 17(a) of the Securities Act makes it unlawful for any person, directly or indirectly in the offer or sale of any securities:

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

15 U.S.C. §§ 77q(a)(1)–(3).

Accepting as true the well-pled facts set forth in the SEC's Complaint, together with information contained in the sworn declaration of Wilburn Saylor, Jr., Senior Accountant with the SEC, and other

exhibits provided by the SEC, the Court finds that Defendant violated Sections 17(a)(1) through (a)(3) of the Securities Act. ECF No. 15-2 (Saylor, Jr. Decl.). The SEC's factual allegations, taken as true, establish that Defendant knowingly, recklessly, or negligently carried out a scheme through which he obtained money or property from his customers by making untrue statements of material facts or material omissions and, more generally, engaged in a transaction, practice, or course of business that constituted fraud or deceit upon his customers. Defendant undertook these actions in the context of the offer of sale of securities, using means and instruments of transportation in interstate commerce, or by the use of the mails, directly or indirectly, as required to establish liability under 15 U.S.C. §§ 77q(a)(1)–(3). The Court therefore finds that Defendant has violated Section 17(a) of the Securities Act.

### B. Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act makes it illegal for any person, directly or indirectly:

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b)

And Rule 10b-5, which essentially implements Section 10(b), renders it unlawful for any person, directly or indirectly:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b-5.

Accordingly, to demonstrate that default judgment is warranted on these anti-fraud provisions, the SEC must allege facts showing that the defendant "engaged in (1) misrepresentations or omissions of material facts (2) made in connection with the offer, sale or purchase of securities (3) with scienter on the part of the defendant[ ]." *S.E.C. v. George*, 426 F.3d 786, 792 (6th Cir. 2005) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)). A fact is material if there is a substantial likelihood that "(1) a reasonable shareholder would consider the fact important in making his investment decision and (2) a reasonable shareholder would view the information as having significantly altered the total mix of information." *George*, 426 F.3d at 792 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). Recklessness is sufficient to establish the requisite scienter and is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *George*, 426 F.3d at 792

9

(quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).

Taking as true the factual allegations set forth in the Complaint, as well as information provided in the SEC's exhibits and Saylor's declaration, the Court finds that Defendant has violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Plainly, Defendant misrepresented or omitted material facts in connection with the offer, sale or purchase of securities when he failed to inform his brokerage customers that he was not, as he had promised, investing their money for the customers' behalf but was instead funneling it into his personal business accounts. ECF No. 1 PageID.1–2 (Compl.). Such information is undoubtedly material because reasonable shareholders would consider it important in choosing whether and how to invest their money with Defendant and would deem it to significantly affect the information available to them. According to facts asserted in the Complaint, Defendant's conduct manifested requisite scienter to establish liability under Section 10(b) and Rule 10b-5 because it demonstrated knowledge or, at a minimum, recklessness or negligence. ECF No. 1 PageID.8.

**C. Permanent Injunction**

Both the Securities Act and Exchange Act authorize courts to issue a permanent injunction against future violations of the Acts where the government has established past violations by the defendant. *U.S.S.E.C. v. Bravata*, 3 F. Supp. 3d 638, 662 (E.D. Mich. 2014) (citing 15 U.S.C. §§

77t(b), 78u(d)); *S.E.C. v. Blavin*, 557 F. Supp. 1304, 1315–16 (E.D. Mich. 1983) (citing 15 U.S.C. § 78u(d)). "A permanent injunction merely prohibits defendants from violating securities law, something that they are required to do anyway." *U.S. S.E.C. v. Blackwell*, 477 F. Supp. 2d 891, 910 (S.D. Oh. 2007). But this tool also serves the purpose of streamlining the SEC's administrative process for initiating any future action against a defendant and enables the SEC to seek contempt of court against any defendant who violates the Court's injunction. *Id.* Because injunctions prohibiting future violations of securities law are primarily intended to protect the public from future misconduct, "the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief." *S.E.C. v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984) (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 08 (2d Cir. 1975)).

To warrant permanent injunctive relief, the SEC must demonstrate "a reasonable and substantial likelihood" that the defendant, "if not enjoined, would violate the securities laws in the future." *Youmans*, 729 F.2d at 415. The following factors are relevant to determining the likelihood of future violations: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances, if any, against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; (6) the likelihood that

11

the defendant's occupation will present opportunities (or lack thereof) for future violations; and (7) the defendant's age and health. *Id.* (citing *S.E.C. v. Washington Cty. Util. Dist.*, 676 F.2d 218, 227 & n.19 (6th Cir. 1982)).

Here, based on the allegations in the Complaint, which the Court must accept as true, a permanent injunction against future violations of the Securities Act is warranted. Though Defendant was barred by the Financial Industry Regulatory Authority in July 2017 and the Michigan Department of Licensing and Regulatory Affairs banned him from registering as a broker-dealer in August 2017, the egregious and repeated nature of his violations, in addition to the high degree of scienter, render issuance of a permanent injunction appropriate. The fact that Defendant is incarcerated does not necessarily mitigate the need for the issuance of a permanent injunction. *See, e.g.*, *Blackwell*, 477 F. Supp. 2d at 912; *S.E.C. v. Tandem Mgmt.*, No. 95 CIV. 8411(JKG), 2011 WL 1488218 (S.D.N.Y. 2001). The Court finds issuance of a permanent injunction prohibiting Defendant from committing additional securities violations is warranted.

### D. Disgorgement and Prejudgment Interest

"[S]ecurities laws confer general equitable powers upon district courts" and one such power in equity is the power to order disgorgement of profits wrongfully gained by the defendant in violation of securities law. *Blavin*, 557 F. Supp. at 1316 (citing *J.I. Case Co. v. Borak*, 377 U.S.

12

426, 433 (1964)) (additional citations omitted). *See Blavin*, 760 F.2d at 713 (6th Cir. 1985) (explaining that disgorgement is an equitable remedy). Federal courts may order disgorgement where a defendant has "received ill-gotten funds" and, as here, "does not have a legitimate claim to those funds." *George*, 426 F.3d at 798 (citing *S.E.C. v. Cavanagh*, 155 F.3d 129, (2d Cir. 1998)). The purpose of disgorgement is to compel a defendant to give up the sum of money by which he was unjustly enriched, rather than to compensate any victims of the defendant's securities fraud. *Bravata*, 3 F. Supp. 3d at 661. Accordingly, once the SEC establishes that a defendant has violated securities laws, the district court "possesses equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by [defendant's] fraud." *Blavin*, 760 F.2d at 713. *See Washington Cty. Util. Dist.*, 676 F.2d at 227 (requiring defendant to disgorge a sum equal to all the illegal payments he received). Calculation of the exact amount by which the defendant was unjustly enriched "need not be exact, and determination of the appropriate amount is left to the sound discretion of the trial court. *Conway*, 697 F. Supp. 2d at 747. The amount of disgorgement ordered must only be "a reasonable approximation of profits causally connected to the violation," and once the government has produced evidence to support that approximation, the burden shifts to the defendant "clearly to demonstrate that the disgorgement figure was not a reasonable approximation." *Bravata*, 3 F.

13

Supp. 3d at 661 (quoting *S.E.C. v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231–32 (D.C. Cir. 1989)).

The SEC's Complaint asserts factual allegations that, when taken as true, demonstrate Defendant violated Section 17(a) of the Securities Act as well as Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Accordingly, the Court finds it appropriate to order him to disgorge the ill-gotten profits of his fraudulent financial scheme. The SEC has provided documentation in the form of a declaration by its Senior Accountant and another exhibit to substantiate its assertion that Defendant should disgorge $2,755,737 he obtained as a result of the fraudulent scheme, in addition to prejudgment interest in the amount of $18,724. ECF No. 15-2 (Saylor, Jr. Decl.); ECF No. 15-3 (Sources and Uses of Customer Funds). *See Bravata*, 3 F. Supp. 3d at 662 ("The district court 'may add prejudgment interest to the disgorgement amount to avoid a defendant benefitting for the use of his ill-gotten gains interest free.'") (quoting *S.E.C. v. Conaway*, 697 F. Supp.2d 733, 747 (E.D. Mich. 2010)).

### E. Civil Penalties

"Congress incorporated penalties into the securities laws when it enacted the Securities Law Enforcement Remedies Act of 1990." *Conaway*, 697 F. Supp.2d at 747. *See* 15 U.S.C. § 78u(d)(3)(A)). Section 21(d) of the Exchange Act permits courts, "upon a proper showing," to impose civil penalties for any violation of the Exchange Act. 15 U.S.C.

§ 78u. Likewise, Section 20 of the Securities Act, 15 U.S.C. § 77S, authorizes courts to impose civil penalties for violation of the Securities Act. In enacting the Remedies Act, Congress "concluded that authority to seek or impose substantial money penalties, in addition to disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise would provide great financial returns to the violator." S. Rep. 101–337 (1990), *reprinted in* 1990 WL 263550. The Remedies Act provides different tiers of penalties, the third and highest of which applies where the violation "involved fraud, deceit, manipulation" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 78u(3). For violations that fall within this third category, the maximum fine for each violation is the greater of $100,000 for a natural person, or "the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(3)(B)(iii).

Defendant's conduct, as alleged by the SEC, certainly falls within the third tier outlined in the Remedies Act because it involved substantial fraud, deceit, and manipulation, and also resulted in substantial losses for Defendant's former customers—many of whom lost their life savings. In light of the substantial prison sentence Defendant is serving for his related state-court convictions, however, the SEC has requested voluntary dismissal of its claims for civil penalties. ECF No.

15 PageID.57. That request will be granted, and the claims for civil penalties will be dismissed.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the SEC's motion for default judgment (ECF No. 15) is **GRANTED**. The Court will enter a separate final judgment of default against Defendant Ernest J. Romer, III enjoining him from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Court will also adjudge Defendant liable for disgorgement of $2,755,737, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $18,724, for a total of $2,774,461. *See* ECF No. 15-2 PageID.154 (Saylor, Jr. Decl.) (outlining method used to calculate prejudgment interest). The claim seeking civil penalties pursuant to Section 20 of the Securities Act, 15 U.S.C. § 77t, and Section 21 of the Exchange Act, 15 U.S.C. § 78u, contained in paragraph IV of the Complaint's "Relief Requested" section, is hereby **DISMISSED** without prejudice.

**SO ORDERED.**

Dated: July 17, 2019         s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE